**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deannah Neswood-Gishey; State Farm Mutual Automobile Insurance Company, <br><br>Plaintiffs, <br><br>vs. <br><br>United States of America, <br><br>Defendant. | No. CV 07-8007-PCT-EHC <br> No. CV 07-8037-PCT-EHC <br><br> **ORDER** |

Before the Court is Defendant United States of America's motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3) for lack of jurisdiction (Dkt. 39) and Plaintiff State Farm Mutual Automobile Insurance Company's Cross-motion for Judgment as a Matter of Law (Dkt. 41). For the reasons discussed herein, Defendant's motion is denied and Plaintiff State Farm's motion is granted.

**I. Procedural History**

Plaintiff Neswood-Gishey brings this lawsuit under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), for injuries suffered during a May 18, 2006, car accident with a vehicle driven by Helen Store, an employee of the Navajo Nation Division of Social Services ("NNDSS"). (Dkt. 1). The vehicle driven by Ms. Store was owned by the NNDSS, which is authorized and funded by the United States under the ultimate administrative oversight of the United States Bureau of Indian Affairs. (Dkt. 1, ¶ 4). Ms. Store drove the vehicle into

1   the rear-end of Plaintiff Newswood-Gishey's vehicle, which had stopped on Navajo Route
2   15 near Greasewood, Arizona, to wait while livestock were crossing the road. (Dkt. 1, ¶¶ 13,
3   18). The impact from the collision caused Plaintiff Neswood-Gishey's vehicle to overturn,
4   trapping her inside and causing her bodily injuries. (Dkt. 1, ¶ 21).

5   Plaintiff filed her Complaint against Defendant United States of America on May 18,
6   2007, for damages in the form of medical expenses, lost earnings, lost earnings capacity, loss
7   of household services, travel costs associated with medical appointments, physical pain,
8   emotional suffering, and property damage to her car. (Dkt. 1, ¶¶ 33, 34). Plaintiff alleges
9   that the cause of the collision was Ms. Store's negligence and that the United States is liable
10  because, at the time of the collision, Ms. Store was driving a vehicle belonging to NNDSS
11  and was engaged in job-related activities for NNDSS such that Ms. Store was acting within
12  the scope of her employment. (Dkt. 1).

13  Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") brought
14  a separate subrogation action against Defendant United States for money damages arising out
15  of property damage caused to the vehicle owned by Plaintiff Neswood-Gishey. (07-08037).
16  State Farm's case was consolidated with this case on October 12, 2007. (Dkt. 17).

17  On March 17, 2008, Defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P.
18  12(b)(1) and 12(h)(3) for lack of jurisdiction. (Dkt. 39). In its Motion to Dismiss, Defendant
19  contends that Ms. Store was not acting within the scope of her employment with NNDSS at
20  the time of the collision and thus, this Court lacks subject matter jurisdiction over Plaintiff's
21  claim. (Dkt. 39). On March 26, 2008, Plaintiff State Farm filed its Response to Defendant's
22  Motion to Dismiss and moved for Judgment as a Matter of Law that Ms. Store was acting
23  within the scope of her employment at the time of the accident. (Dkt. 41). Plaintiff
24  Neswood-Gishey also filed a Response to Defendant's Motion to Dismiss on April 22, 2008.
25  (Dkt. 48).

26  **II. Factual Background**

27  The basic facts of the case are not in dispute. At the time of the accident, Ms. Store
28  was employed by the NNDSS in Leupp, Arizona as a Principal Social Services

1  Representative. (Dkt. 39, pg. 4). Her duties included locating and recruiting foster parents
2  and foster homes for the Navajo Nation. (Dkt. 39, pg. 4). Ms. Store was authorized to check
3  out a tribal vehicle to use for these purposes. (Dkt 39, pg. 4). Ms. Store had reserved and
4  received approval to use a tribal vehicle on May 19, 2006, for tribal business purposes; she
5  had not received approval to use a tribal vehicle on May 18, 2006. (Dkt. 39-2, pg. 2).

6  Nevertheless, at the end of a workday on May 18, 2006, Ms. Store drove an NNDSS
7  vehicle to Window Rock, intending to visit foster parents in Greasewood on the way and also
8  to deliver documents in Window Rock for NNDSS the following morning. (Dkt. 39, pg. 4).
9  She planned on staying that evening at her husband's apartment in Window Rock. (Dkt. 39,
10 pg. 4). En route to Window Rock, Ms. Store drove her vehicle into the rear of the privately
11 owned vehicle driven by Plaintiff Neswood–Gishey. The crash occurred just east of
12 Greasewood, after the point where Ms. Store intended to turn off to visit the potential foster
13 parents in Greasewood. (Dkt. 48, pg. 3).

14 In the Motor Vehicle Accident Report ("Accident Report") completed by Ms. Store,
15 she stated she had decided to leave early for Window Rock that evening instead of the
16 following day so that she could visit a foster home applicant who worked during the day and
17 was home only on evenings. (Dkt. 39-2, pg. 8). She further stated, "My job takes me into
18 homes evenings too as some potential [foster parents] are available only during evenings.
19 I believe this trip to be within normal working hours for me." (Dkt. 39-2, pg. 9). Ms. Store
20 also indicated in the Accident Report that she had not engaged in any activity other than that
21 for which the trip was authorized while en route and that she had forgotten to make the stop
22 at the applicant's home in Greasewood. (Dkt. 39-2, pgs. 8, 9).

23 **III. Legal Standard**

24 A court is under a continuing duty to dismiss an action whenever it appears that the
25 court lacks jurisdiction. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)
26 (citing *Csibi v. Fustos*, 670 F.2d 134, 136 (9th Cir. 1982)). The Court is ordinarily free to
27 weigh the evidence and determine its jurisdiction: "the existence of disputed material facts
28 will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

*Thornihill Pub. Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977). If the jurisdictional facts at issue go to the merits of the claim, the court should employ an analysis similar to that used in analyzing a motion for summary judgment. *Tentacosta v. Frontier Pacific Aircraft Industries*, 813 F.2d 1553, 1558 (9th Cir. 1987). Such motion will be granted if "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

The Federal Torts Claim Act (FTCA), 28 U.S.C. §§ 1346(b), 2671, *et seq.*, provides a "limited waiver of the sovereign immunity of the United States for torts committed by federal employees acting with the scope of employment." *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000); *see also United States v. Orleans*, 425 U.S. 807, 813 (1976). Plaintiff has the burden of persuading the Court that it has subject matter jurisdiction under the FTCA's general waiver of sovereign immunity. *Prescott v. United States*, 973 F.2d 696, 701 (9th Cir. 1992). Whether an employee was acting within the scope of her employment is determined by the respondeat superior law of the state in which the alleged tort occurred. *See* 28 U.S.C. § 1346(b); *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996) ("FTCA scope of employment determinations are made according to the principles of respondeat superior of the state in which the alleged tort occurred."); *Hartzell v. U.S.*, 786 F.2d 964, 965 (9th Cir. 1986).

**IV. Scope of Employment**

Under Arizona law, an act of an employee is within the scope of employment if it meets three requirements. The act must (1) be typical of the kind of work the employee was hired to perform; (2) occur substantially within the authorized time and space limits; and (3) be intended at least in part to serve the employer.[1] *Anderson v. Gobea*, 18 Ariz. App. 277,

---

[1]Alternatively, an act involving an employee can be within the scope of employment in Arizona if, at the time of the act, the employee is: (1) subject to the employer's control or right to control; and (2) acting in furtherance of the employer's business. *Robarge v. Bechtel Power Corp.*, 131 Ariz. 280, 640 P.2d 211, 214 (Ct. App. 1982). In *Robarge*, an employee

1  280, 501 P.2d 453, 456 (1972); *see also Duncan v. State*, 157 Ariz. 56, 754 P.2d 1160 (Ct.
2  App. 1988); *Hartzell*, 786 F.2d at 966.

### A. An Act Typical of the Kind of Work the Employee is Required to Perform

In order to meet the first prong of *Anderson*, the accident must have occurred while the employee is engaged in an act typical of the work that the employee was hired to perform. *See Anderson*, 18 Ariz. App. at 280, 501 P.2d at 456. In this case, Ms. Store's job was to recruit foster parents. (Dkt. 39, pg. 4). At the time of the accident, she was driving an NNDSS vehicle to Window Rock, intending to visit foster parents in Greasewood on the way and also to deliver documents in Window Rock for NNDSS the following morning. (Dkt. 39-2, pg. 9). Because neither party disputes that Ms. Store's typical duties included traveling to various homes and delivering materials to other offices of the Navajo Nation on behalf of her employer (Dkt. 48-2, ¶ 8), Ms. Store was clearly engaged in an act typical of the kind of work she was required to perform at the time of her accident.

### B. Act Occurs Substantially Within Authorized Time and Space Limits

Under the second prong of *Anderson*, the act of an employee must occur substantially within the authorized time and space limits of the employment. *See Anderson*, 18 Ariz. App. at 280, 501 P.2d at 456. An employee's act, however, need not occur within the exact time or space authorized by the employer for it to be within the scope of employment. *See Ohio*

---

was found not to be within the scope of his employment at the time an accident occurred because, as the court reasoned, the employee's workday had ended, he was driving home in his own vehicle without any employer-imposed obligations concerning route or manner of travel, he had no further work-related duties to perform, and his employer had no claim on him until the following morning. *Id.* Because the Court finds that the three requirements set forth in *Anderson* are satisfied, the Court does not discuss at length the *Robarge* test. Nonetheless, the *Robarge* test is also satisfied in the present case. The facts in this case are substantially different and suggest that Ms. Store was subject to control: Ms. Store was not driving her own personal vehicle at the time of the accident, she had work-related tasks she intended to perform that day, and she stated in her Accident Report that the accident occurred within her normal work hours. (Dkt. 39-2, pg. 9). Furthermore, by carrying documents that were to be delivered to Window Rock the following morning, Ms Store was indeed acting "in furtherance of the employer's business."

- 5 -

*Farmers Ins. Co. v. Norman*, 122 Ariz. 330, 332, 594 P.2d 1026, 1028 (App. 1979) (an employee's act need not be performed "in exact observance of the detail proscribed by the employer" for it to be within the scope of his or her employment). For example, in *Love v. Liberty*, a waitress was found to be acting within the scope of her employment when, after the end of her shift, she drove to her assistant manager's house in his car to pick up a microphone part for a band that was to perform at the restaurant that evening. *Love v. Liberty Mut. Ins. Co.*, 158 Ariz. 36, 760 P.2d 1085 (Ct. App. 1988). Because the act was a clear benefit to the employer, the Court of Appeals concluded that it occurred sufficiently within the employment's authorized time and space even though the waitress was not acting at the request of her employer, it had not occurred on the restaurant's premises, and the worker was no longer on duty at the time. *Id.* at 39, 760 P.2d at 1088. Similarly, in *Anderson* an employee who was in a car accident while driving from home to work before his workday had begun was found to be acting within the scope of his employment because he had hooked his employer's air compressor to the back of his pick-up truck the day before and was bringing it with him to work that day. *Anderson*, 18 Ariz. App. 277, 501 P.2d 453. In contrast, the Ninth Circuit in *Hartzell*, applying Arizona law, held that an accident involving an employee was not within the scope of employment because, *inter alia*, the accident occurred while the employee was on leave, she was not performing any work-related duties while traveling, and her employer had authorized her to use her own vehicle to travel for personal reasons. *Hartzell*, 786 F.2d at 966-67.

In this case, Ms. Store left for Window Rock immediately after leaving the NNDSS office at 5:45 p.m. on the evening of May 18, 2006. (Dkt. 34, pg. 4). Despite the Defendant's contention that Ms. Store's workday had ended at the time of the accident, Ms. Store indicated in the Accident Report that she is often required to make home visits in the evening as part of her job because many potential foster home candidates work during the day and are only available at night. (Dkt. 39-2, pg. 9). She further stated that she believed the accident occurred within her normal work hours. (Dkt. 39-2, pg. 9). Ms. Store's statements are also consistent with the affidavit submitted by Plaintiff Neswood-Gishey, Southwest Regional

1  Director of NNDSS, in which she stated that "[v]ehicles were commonly taken to use after
2  normal business hours." (Dkt. 48-2, ¶ 11). Furthermore, the facts in this case are more
3  similar to *Love* than *Hartzell*: there is no dispute that Ms. Store was working on the day of the
4  accident, which occurred less than two hours after she had left the office while she was en
5  route to Window Rock (Dkt. 39, pg. 4), performing a service that was a benefit to her
6  employer. If Ms. Store had not made the trip to Window Rock that evening, she would have
7  made the same trip the following morning on behalf of her employer during normal work
8  hours. Because the record suggests that Ms. Store often performed work-related duties in the
9  evening, driving an NNDSS vehicle to various locations, the accident in this case did occur
10 substantially within the authorized space and time of Ms. Store's employment.

### C. Intended at Least in Part to Serve the Employer

Finally, an employee's act must be intended at least in part to serve the employer in order for it to be within the scope of employment. *See Anderson*, 18 Ariz. App. at 280, 501 P.2d at 456. In Arizona, the test is whether, "at the time of the commission ... an employee was performing a service in furtherance of his employer's business, *not whether it is done in exact observance of the detail prescribed by the employer*." *Norman*, 122 Ariz. at 332, 594 P.2d at 1028 (emphasis added). While in general commuting to and from work ("going and coming") does not fall within the scope of employment, Arizona has adopted the dual-purpose exception which applies "when, in addition to merely commuting, the employee performs a concurrent service for his employer." *See Faul v. Jelco Inc.*, 122 Ariz. 490, 492, 595 P.2d 1035 (Ct. App. 1979). If the service performed "would have necessitated a trip by another employee if the commuting employee had not been able to perform it while commuting," then the commute falls within the scope of employment notwithstanding the employee's personal motives for the commute. *Id.*

As the court in *Anderson* noted, the dual-purpose exception applies to Arizona repondeat superior law in addition to Arizona Workers Compensation law. *Anderson*, 18 Ariz. at 282, 501 P.2d at 458; *see also Butler v. Industrial Commission*, 50 Ariz. 516, 73 P.2d 703 (1937) (adopting the dual-purpose exception to the going and coming rule). As

previously discussed, in *Anderson*, an employee who was involved in the accident while driving to work before his work hours had begun was found to be within the scope of employment because he was bringing his employer's air compressor to work with him that day. *Anderson,* 18 Ariz. App. at 282, 501 P.2d at 458. The court noted that if the employee had decided to no longer work for the employer, it would have had to send another employee to secure the air compressor and bring it to the job site. *Id.* The court further stated that "if the work of the employee creates the necessity for the travel, he is in the course of his employment, though he is serving at the same time some purpose of his own." *Id*. at 282, 501 P.2d at 458 (citing *Mark's Dependents v. Gray*, 167 N.E. 181, 183 (N.Y. 1929)).

In this case, Ms. Store stated that her purpose for leaving for Window Rock a day early was to visit a foster home applicant en route to Window Rock who was available that evening. (Dkt. 39-2, pgs. 8-9). She also intended to stay the night at her husband's house and deliver documents and meet with program staff at the central office of NNDSS the following morning in Window Rock. (Dkt. 48, pg. 3). Even accepting the Defendant's contention that Ms. Store's decision to leave early was partly motivated by her desire to spend the evening at her husband's house in Window Rock, the dual purpose exception applies in this case. Ms. Store's commute was indeed intended at least in part to benefit her employer. If Ms Store had not been able to perform the drive either that night or the following morning to Window Rock, another employee would have had to take the trip. Furthermore, that Ms. Store's act in driving to Window Rock was of a benefit to NNDSS is further evidenced by NNDSS's authorization for Ms. Store to use the tribal vehicle and drive the two and a half hour-trip to Window Rock the very next day for the same purposes. (Dkt. 39-2, pg. 2). That the trip commenced early does not mean it was not in furtherance of her employer's interest. As the Arizona Court of Appeals has indicated, "the business trip at issue need not have been taken by [the same employee] at the same time that [the employee] took it but that someone would eventually have to make the trip for the company." *Connors v. Parsons*, 169 Ariz. 247, 252, 818 P.2d 232 (Ct. App. 1991).

1       Defendants rely on *Clamor v. U.S.*, 240 F.3d 1215 (9th Cir. 2000). (Dkt. 39, pg. 9).
2 However, *Clamor*, a Ninth Circuit decision that applied Hawaii respondeat superior law, is
3 distinguishable from the case at hand. *Clamor* held that a driver was not within the scope of
4 employment at the time of an accident because he was "not engaged in any errand for his
5 employer, but was leaving work and free to do whatever he wished. The United States [the
6 employer] derived no benefit from [his] activities once he stopped working . . . and left for the
7 day, any more than it does when any other employee departs for the evening." *Id.* at 1217.
8 In this case, Ms. Store was engaged in an errand for her employer at the time of the accident
9 and was not merely leaving the office for the day. Her employer was benefitting by her
10 decision to drive to Window Rock that evening, a task she had specific authority to do the
11 following day. In this case, unlike in *Clamor*, traveling is a common and essential part of Ms.
12 Store's work function and involved more than simply going to and from the work office: Ms.
13 Store was required to travel to various offices and visit potential foster homes as part of her
14 job.[2] (Dkt. 48, pg. 2).

15       Defendant further contends that Ms. Store could not have been acting within the scope
16 of her employment at the time of the accident because NNDSS safety procedures enacted two
17 days before the collision prohibited home visits to be made with tribal vehicles after 5:00
18 p.m., except in emergency situations with prior approval. (Dkt. 39, pg. 4). However, the

---

[2]More analogous to the case at hand is *Brown v. Arapahoe Drilling Co.*, 70 N.M. 99, 370 P.2d 816 (1962), which held that an employee who was involved in an accident on the way home from work, and who had taken work papers home for pick up by his employer the following morning, was acting within the scope of employment. Although *Brown* applied New Mexico respondeat superior law, it followed the same test expressed in *Anderson* and was cited positively by the court in *Anderson. See Anderson*, 18 Ariz. App. at 282, 501 P.2d at 458. The court in *Brown* reasoned that if the employee had not taken the papers home, another employee would have had to make a special trip at another time. *Brown*, 370 P.2d at 819. Thus, the employee's travel furthered his employer's interest even though the employee was merely traveling home for work. *Id.* In so finding, the court ruled that the dual purpose test had been met. *Id.* Similarly in this case, if Ms. Store had not driven the documents to Window Rock that evening, she would have made, and was specifically authorized by her employer to make, the same trip the following day. (Dkt. 39, pg. 4).

- 9 -

1 policy referenced by Defendants appears to apply only to home visits made by employees
2 after 5:00 p.m. and makes no mention of other work-related duties that might require use of
3 tribal vehicles after 5:00 p.m. (Dkt. 39-2, pg. 13). In this case, visiting a potential foster
4 home was not the sole purpose for Ms. Store's trip to Window Rock: Ms. Store's reason for
5 driving to Window Rock on the evening of the accident was also to deliver documents to a
6 NNDSS office in Window Rock the following morning. (Dkt. 48, pg. 3). Furthermore,
7 neither party disputes that keys to the tribal vehicles were left in drawers for employees to
8 take and were not handed out by supervisors under a formal policy. (Dkt. 39-2, pg. 3).
9 Indeed, the statements made by Plaintiff Newsood-Gishey in her Affidavit (Dkt. 48-2) and the
10 statements made by Ms. Store in the Accident Report (Dkt. 39-2, pgs. 8-9) support the
11 inference that workers had a great deal of freedom in taking tribal vehicles, regardless of the
12 recently enacted NNDSS policy. More importantly:

> [T]he true test of whether an employer is liable for the act of his employee is whether, at the time of the commission of the injury, the employee was performing a service in the furtherance of his employer's business, *not* whether it was done in *exact observance of the detail proscribed by the employer*.

*Norman*, 122 Ariz. at 332, 594 P.2d at 1028 (emphasis added). An employer can be liable for
an act of an employee within the scope of his employment even when the employer has
"*expressly forbidden the act.*" *Id.* at 331-32 (emphasis added). Thus, even if her employer
had expressly forbidden Ms. Store from taking a vehicle to perform any work-related duty
after 5:00 p.m., that alone would be insufficient to take Ms. Store's trip outside the scope of
employment.

Because Ms. Store's act of traveling to Window Rock was typical of the kind of work
she was hired to perform, it occurred substantially within the authorized time and space limits,
and it was intended at least in part to serve her employer, the Court finds that the accident did
occur within the scope of her employment. *See Anderson*, 18 Ariz. App. at 280, 501 P.2d at
456.

Accordingly,

**IT IS ORDERED** denying Defendants' Motion to Dismiss (Dkt. 39).

- 10 -

1 **IT IS FURTHER ORDERED** granting Plaintiff State Farm Mutual Automobile Insurance Company's Cross-motion for Judgment as a Matter of Law (Dkt. 41).

DATED this 9th day of July, 2008.

*Earl H. Carroll*
Earl H. Carroll
United States District Judge